IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Jerry L. Lyons and Michael J. McKenzie, )
individually and on behalf of all others )
similarly situated, )
)
    Plaintiffs, )
)
v. )
)
Georgia-Pacific Corporation )
Salaried Employees Retirement )
Plan and Georgia-Pacific )
Corporation, )
)
    Defendants. )

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 0 9 2005

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

Civil Action

File No. 1: 97-[illegible]

Hon. J. Owen Forrester

**Class Counsels' Response to the
Motions of Donald Corbin,
David W. Kantola and Other
Class Members**

## CLASS COUNSELS' RESPONSE TO THE MOTIONS OF
## DONALD CORBIN, DAVID W. KANTOLA, AND OTHER CLASS MEMBERS

Pursuant to the Court's August 2, 2005 Order, Hertz, Schram & Saretsky, P.C. ("Class Counsel") offers the following response to the motions of Donald Corbin and David W. Kantola ("the Movants") and the motions of other Class members who have asserted the same or similar allegations as Movants (e.g., David L. Fredrickson)[1]:

1.     The Movants have requested that the Court (a) "reopen the case"; (b) order LECG (the settlement administrator) to pay them a settlement amount based on *their* calculations (as opposed to the settlement amount determined by the actuaries retained in this case); and (c) "supply funds from the Class Action attorney's $29,000,000 [sic $22.3 million] award" so that they can

---

[1] Although the Court's Order notes a motion by Gerald D. Livingston, Class Counsel has not received a motion by Mr. Livingston and Class Counsel has been unable to obtain a copy of any such motion from the Clerk's office where the motion would presumably be filed (or from the Pacer electronic docketing system).

1

"defend" the amounts determined under *their* calculations.

2. The sole reason given by the Movants for their requested relief is that "the LECG Whipsaw Calculation Method does not work," and "thus cannot be trusted to supply correct settlement offers." In support of this contention, the Movants supply reams of calculations they insist prove that the "LECG Whipsaw Calculation Method does not work."

3. The Court should deny the Movants' motions (and any similar motion) because (a) the Movants have not met their burden of proof that the "LECG Whipsaw Calculation does not work"; and (b) <u>the report of the independent actuary establishes that the formulas for computing the settlement amounts *do* "work."</u>

4. The Movants are not actuaries; they have not supplied the Court with any report or calculation prepared by an actuary; and there is no evidence that they have even consulted an actuary.

5. Class Counsel and defendants, on the other hand, each retained actuaries who assisted them throughout the litigation.

6. After the case was settled, but before any distributions were made, there was considerable communication between the parties and their actuaries (and between the parties' actuaries) regarding the database for the Class, which was to contain (and does contain) the data specific to each Class member (e.g., date of original lump sum, amount of original lump sum, age, etc.), and the formulas for performing the mass calculations (over 20,000). The purpose of these myriad communications was to ensure that the data was accurate and the formulas correct. After the data and formulas were repeatedly checked and re-checked, and finally deemed to be in good order, each party's actuary *independently* ran the mass calculations, and the result was that both

actuaries were within <u>pennies</u> of the same number! However, the due diligence did not stop there.

7. Pursuant to the Settlement Agreement, and as ordered by the Court, an independent actuary–Richard Lenar of McCready and Keene, Inc. ("McCready")--audited the formulas and calculations to ensure that they "worked."

8. Pages from McCready's website reveal that McCready, established in 1933, (a) offers virtually every type of retirement plan available, (b) has a staff of over 100 actuaries and other pension experts, and (c) manages more than 900 plans that collectively cover over one- half million participants and have combined assets totaling more than $10 billion. See Exhibit A (web pages printed May 11, 2004) and Exhibit B (web pages printed September 7, 2005).

9. Mr. Lenar's resume (Exhibit C) reveals that Mr. Lenar (a) has been performing actuarial valuations and studies on all types of defined benefit plans for 20 years, (b) is the Chief Actuary and Director of Actuarial Operations for McCready, and (c) has been a guest speaker for the American Society of Pension Actuaries (ASPA) and other groups.

10. As noted in Mr. Lenar's audit report, dated June 11, 2004 ("the Report") (Exhibit D), Mr. Lenar was provided with a copy of the Settlement Agreement and the Excel database containing the data specific to each Class member and the formulas for performing the calculations required under the Settlement Agreement.

11. As explained in the Report, the first thing Mr. Lenar checked was the "programing of the electronic calculations" so he could "verify that the appropriate formulas and actuarial tables had been set-up correctly and replicated accurately as necessary." Mr. Lenar found that the programming was "accurate and in accordance with the provisions in Sections 5.01 and 5.02 of the Settlement Agreement" [the provisions containing the formulas for computing the settlement

amounts].

12.     Next, Mr. Lenar selected a representative sample of 70 participants from the various subgroups of participants [identified in Sections 5.01 and 5.02 of the Settlement Agreement] "so that each set of the changing plan provisions throughout the class period was adequately covered." Mr. Lenar found that his independent calculations were within 0.5% of the amount calculated by the Excel spreadsheet. As explained in the Report, this tiny difference was likely due to reasonable differences in actuarial methods that are a normal part of the actuarial process:

> "We note that actuarial calculations are estimates by nature, and that reasonable differences in actuarial methods (such as interpretations regarding the precise timing of deaths during a year) allow for small differences in the final results. Thus, we consider results with .5% of one another to be equally valid."

13.     Mr. Lenar also found that the tables of interest rates and mortality rates were consistent with published sources, accurate and complete, and that the distribution of the Net Settlement Fund was likewise "accurate and in accordance with the provisions of the Settlement agreement."

14.     The Report concludes that "the calculations fully reflect the terms of Sections 5.01 and 5.02 of the Settlement agreement and those terms have been appropriately applied throughout the various subclasses."

15.     In short, the Report of the independent actuary provides compelling evidence that the settlement formula and calculations *do* work; and the Movants have not provided any calculations or report *of an actuary* that would suggest the situation is otherwise.

16.     Lastly, this response would be incomplete if it did not address the implication underlying the allegations in the Movants motions–that Class Counsel have somehow not done their

due diligence and/or acted in the best interests of the Class. It is hoped that the following brief history of the litigation will convince the Movants otherwise.

17. This dispute arose over twelve years ago when plaintiff Jerry L. Lyons received a lump sum distribution of his pension benefit from the Plan. Shortly after receiving his lump sum on January 1, 1993, Mr. Lyons complained to Georgia-Pacific ("G-P") that the Plan had understated his benefit. G-P disagreed, and the dispute thereafter remained unresolved until 11 years later when the parties settled this case.

18. In 1995, Mr. Lyons contacted the National Center for Retirement Benefits, Inc. ("NCRB") to assist him in pursuing a claim for additional pension benefits from the Plan. After its investigation, the NCRB asserted an administrative claim with G-P in 1996, contending that Lyons' lump sum was not computed in accordance with the present value rules under ERISA §203(e)(2). G-P denied the claim and Mr. Lyons' subsequent administrative appeal, and Mr. Lyons then sued to recover his benefit shortfall, bringing the Complaint as a class action.

19. What followed was a tortuous, contentious and horrendously expensive seven-year legal battle that included virtually every type of proceeding in this Court, mediation, and proceedings in the Eleventh Circuit Court of Appeals, the United States Supreme Court, and even another federal district court (on a subpoena to depose and obtain documents and information from one of Mr. Lyons' attorneys). There were also additional proceedings before the Plan Administrator (ordered by the Court). Suffice it to say, the road to settlement was long and difficult.

20. Throughout the litigation, Class Counsel spared no legal time, cost or effort to zealously advocate for the Class, all without any guarantee whatsoever that they would receive a dime once the litigation was over.

21. In short, Class Counsel worked tirelessly and selflessly for the Class throughout the litigation.

For the foregoing reasons, Class Counsel respectfully request that the Movants' motions and all similar motions be denied.

Respectfully submitted this 8th day of September 2005,

Hertz, Schram & Saretsky, P.C.

*Eva T. Cantarella*

Bradley J. Schram
Robert P. Geller
Eva T. Cantarella
1760 S. Telegraph Rd, Ste. 300
Bloomfield Hills, MI 48302-0183
off. (248) 335-5000

# CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September, 2005, I served a copy of (1) Class Counsels' Response to the Motions of Donald Corbin, David W. Kantola and Other Class Members, and (2) this Certificate of Service on the following persons via first class United States mail:

Attorneys
Peter Q. Bassett, Esq.
and Gregory Braden, Esq.
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
off. (404) 881-7000
[counsel for defendants]

Rex Lamb, Esq. [replaced Bruce Cohen]
Smith Gambrell & Russell
1230 Peachtree Street, NE
Suite 3100, Promenade II
Atlanta, GA 30309-3592
[local counsel for Class until settlement]

Allen C. Engerman
Office of Allen C. Engerman
666 Dundee Road, #1200
Northbrook, IL 60062
[co-counsel for Class]

Settlement Administrator

Cindi A. Straup
LECG
One Main Place
1201 Main Street, #1950
Dallas, TX 75202


Class Members

Michael C. Casey
6530 Natchez
Duluth, MN 55807

Donald Corbin
6911 Cloverdale Drive
South Range, WI 54874

David L. Fredrickson
1325 Mississippi Avenue
Duluth, MN 55811

David W. Kantola
3230 Florine Street
Duluth, MN 55811

David Gellerstedt
2210 Vermilion Road
Duluth, MN 55803

Gerald D. Livingston [address obtained from Court's service list]
151 Slaughter Road
Palatka, FL 32177

Raymond Lofald
5725 Hermantown Road
Duluth, MN 55810

Christine N. Mayeux
3831 Lillian Lane
Ethel, LA 70730-4414

Karen A. Normand
2423 Tupelo
Zachary, LA 70791

James H. Simmons
5209 Greenwood Road
Duluth, MN 55804-2933

_____
Eva T. Cantarella